**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BANNER LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>ASHLEY MARKISZ,<br><br>Defendant. | No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

## INTRODUCTION

Plaintiff, Banner Life Insurance Company ("Banner"), by and through its attorneys, Drinker Biddle & Reath LLP, hereby files this Complaint for Declaratory Judgment, and in support thereof, avers as follows:

1. This is an action for Declaratory Judgment under 28 U.S.C. § 2201, *et seq.*, wherein Banner seeks a declaration establishing its rights and obligations pursuant to a policy of life insurance (the "Policy") issued to Jason Markisz ("Mr. Markisz"). Banner is entitled to the relief it seeks because of, *inter alia*, evidence of the insured's suicide, and one or more material misrepresentations contained in the application submitted to Banner and relied upon by Banner in issuing the Policy. There is, therefore, an actual controversy of a justiciable nature concerning the rights and obligations of the parties under the Policy.

## PARTIES

2. Plaintiff, Banner, is a life insurance company organized and existing under the laws of the State of Maryland, with its principal place of business at 3275 Bennett Creek Avenue, Frederick, Maryland 21704. Therefore, Banner is a citizen of the State of Maryland.

3. Defendant, Ashley Markisz ("Mrs. Markisz"), is a resident of the Commonwealth of Pennsylvania and Mrs. Markisz is domiciled in Horsham, Pennsylvania. Therefore, Mrs. Markisz is a citizen of the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this controversy pursuant to 28 U.S.C. § 1332, because complete diversity of citizenship exists between Banner and Mrs. Markisz, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, at issue is a life insurance policy with a face amount of $500,000.

5. Venue properly lies before this Court pursuant to 28 U.S.C. § 1391(a) because Mrs. Markisz is a resident of this judicial district, and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**BACKGROUND**
**Mr. Markisz's Application for Life Insurance**

6. On or about May 28, 2009, an application was submitted to Banner (the "Application") for a life insurance policy in the amount of $500,000 on the life of Mr. Markisz. A true and correct copy of the Application, with redactions of certain personal identifiers, private health information, and financial account data, is attached to and made a part of the Policy, which is attached hereto as Exhibit "A."

7. The Application identified Mr. Markisz as the proposed insured and the proposed owner, and identified Mrs. Markisz as the sole primary beneficiary of the proposed policy. *See* Application at p. 1.

8. The Application was signed by Mr. Markisz in the Commonwealth of Pennsylvania on May 28, 2009. *See id.* at pp. 5 and 9.

9. The Application provides as follows:

> IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:
>
> I/we have read the application and all statements and answers contained in Part 1 and Part 2 of this application and any supplements thereto, copies of which shall be attached to and made a party of any policy to be issued, are true to the best of my/our knowledge and belief and made to induce Banner Life Insurance Company (the Company) to issue an insurance policy. The statements and answers in the application are the basis for any policy issued by the Company, and no information about me will be considered to have been given to the Company unless it is stated in the application. I agree to notify the Company of any changes to the statements and answers given in any part of the application before accepting delivery of any policy.
>
> ***
>
> I have read the answers as written before signing, the answers are true and complete to the best of my knowledge and belief, and there are no exceptions to any answers other than written on this document.

*Id.*

10. In response to Question No. 4 in the Application, which asked for Mr. Markisz's primary physician's name, address, telephone number, date last seen, and reason last seen and results of visit, Mr. Markisz responded as follows: "Dr. Mandel....March 09 Check up Blood work – All OK." *See id.* at p. 7.

11. In response to Question No. 20 in the Application, Mr. Markisz represented that he had never "consulted a member of the medical profession regarding or [] been diagnosed or treated for" "[d]epression, anxiety, psychosis, suicidal thoughts or attempts of suicide, anorexia or bulimia, obsessive compulsive disorder, bipolar disorder, or other mental, nervous or emotional disorder." *See id.* at pp. 7 and 8.

12. In response to Question Nos. 23(a) and (b) in the Application, which asked whether "[i]n the last 5 years, unless previously stated on this application," he had "[b]een treated by a member of the medical profession or at a medical facility" or "had an electrocardiogram, x-ray, blood test, or other diagnostic test, excluding an HIV test," Mr.

Markisz answered in the affirmative. *See id.* In his remarks, which the Application required to explain any affirmative responses, Mr. Markisz stated as follows: "1/07 to 3/09 Depression Medicine Welbutrin Because of Brother's Death." *See id.* at p. 8.

13. In response to Question No. 23(e) in the Application, Mr. Markisz represented that "[i]n the last 5 years, unless previously stated on this application," he had never "[b]een referred to any other member of the medical profession or medical facility." *See id.* at pp. 7 and 8.

14. In response to Question No. 23(f) in the Application, Mr. Markisz represented that "[i]n the last 5 years, unless previously stated on this application," he had never "[b]een unable to work, attend school or perform the normal activities of like age and gender, or been confined at home." *See id.*

15. In response to Question No. 24(a) in the Application, Mr. Markisz represented that he had never "used amphetamines, barbiturates, cocaine, heroin, crack, marijuana, LSD, PCP, or other illegal, restricted or controlled substances, except as prescribed by a licensed physician." *See id.* at p. 8.

16. In response to Question No. 24(b), Mr. Markisz represented that he had never "been addicted to prescription medication or been advised by a physician to discontinue using habit forming drugs." *See id.* at p. 9.

17. In response to Question No. 25(a), which asked whether he had ever consumed alcoholic beverages, Mr. Markisz answered in the affirmative. *See id.* Question No. 25(a) goes on to state, "If Yes, give type and number of drinks per day and/or per week. Date of last consumption: ___." *See id.* Mr. Markisz stated "1 wk" for date of last consumption, and stated "champagne" in his explanatory remarks.

18. In response to Question No. 25(b), Mr. Markisz represented that he had never "[b]een advised by a physician or other licensed medical practitioner to limit or cease the use of alcoholic beverages." *See id.*

19. In response to Question No. 26(a), Mr. Markisz represented that he was not "currently [t]aking or [] been advised to take any prescription medication (other than contraceptives)." *See id.*

**Banner Issues the Policy in Reliance on the Application**

20. On or about June 29, 2009, after completing a review of the Application, lab results and other documentation received during the underwriting process, Banner approved the Policy for issue at a Preferred Tobacco rating (based on Mr. Markisz's admitted history of tobacco use) with a total death benefit of $500,000, and with Mrs. Markisz as the sole primary beneficiary.

21. On or about July 8, 2009, Mr. Markisz accepted delivery of the Policy. The Policy contains the following "Suicide" provision:

> The benefits payable are limited if the insured commits suicide, while sane or insane, within two years from the Issue Date. In such case, our liability will be limited to a refund of all premiums paid to us.

*See* Policy at p. 6.

**The Death of the Insured and the Claim Investigation**

22. On or about October 5, 2010, Banner received telephonic notification that Mr. Markisz had died on September 27, 2010.

23. Due to the fact Mr. Markisz died within two years from the issue date of the Policy, Banner undertook a routine contestable claim investigation. Accordingly, Banner sought

and began to obtain Mr. Markisz's medical records and other information pertinent to evaluating the claim.

***Mr. Markisz's Death Was an Apparent Suicide***

24. Based on Banner's review of the information obtained during the claim investigation (as set forth below, in part), Banner has concluded that Mr. Markisz committed suicide, and that Banner is therefore obligated only to pay the suicide benefits under the Policy, which are limited to a refund of all premiums paid.

25. During the claim investigation, Banner obtained, *inter alia*, medical records, records from the Bucks County Coroner, and records from the Bristol Township Police Department, which records showed the following, among other things:

a) On the day of his death, Mr. Markisz talked about how he was upset about his financial situation, and about how he missed his brother and best friend, both of whom had committed suicide.

b) On the day of his death, Mr. Markisz argued with his wife all day, and that night, he began firing multiple firearms in his own home, causing his wife and son to flee and the Buck County SWAT Team to be called in.

c) Mr. Markisz then said he was going to commit suicide.

d) An eight-hour armed standoff between Mr. Markisz and the Buck County SWAT Team ensued.

e) During the armed standoff, Mr. Markisz told police that he had taken about 30 pills.

f) Mr. Markisz died of drug toxicity due to taking the pills, with the autopsy showing a showing a toxic level of Bupropion (Wellbutrin) in his blood.

g) Prior to his death, Mr. Markisz had recently been laid off, his house was about to be foreclosed, his car was about to be repossessed, and he had drug debts.

h) Mr. Markisz had a history of depression that appeared to deepen in the last months of his life.

***Material Misrepresentations in the Application***

26. Based on Banner's review of the information obtained during the claim investigation (as set forth below, in part), Banner also has concluded that Mr. Markisz made one or more material misrepresentations in the Application.

27. During the claim investigation, Banner obtained a letter from Marie Manzo, a psychologist, who stated that she first treated Mr. Markisz in November 2006. Ms. Manzo stated that at the time of Mr. Markisz's intake, he reported a history of drug use, and admitted to drinking three six packs of beer per week. Ms. Manzo stated that her initial diagnosis was Major Depression, moderate, and that due to Mr. Markisz's family history, she referred Mr. Markisz to a psychiatrist, Dr. Yong S. Shin, M.D., for medication and to rule out a bipolar disorder. Ms. Manzo stated that she continued to see Mr. Markisz for a number of months, and that the focus of her treatment was, in part, to help him eliminate mood symptoms, stop drinking, and learn how to manage stress.

28. During the claim investigation, Banner obtained medical records from Dr. Shin. According to Dr. Shin's records, she saw Mr. Markisz at least 11 times between December 2006

and June 2008. According to Dr. Shin's records, she diagnosed Mr. Markisz with Major Depression, including a presence of depressed mood, loss of interest, insomnia, fatigue and loss of energy, worthlessness, excessive guilt nearly every day, decreased concentration, and functional impairment. According to Dr. Shin's records, in addition to prescribing Wellbutrin, she also prescribed a number of other medications, including but not limited to Depakote and Remeron. According to Dr. Shin's records, Mr. Markisz reported to Dr. Shin that he had had counseling for two years after his best friend committed suicide in March 2004.

29. During the claim investigation, Banner obtained a letter from Larry Caldwell, a psychologist, who reported seeing Mr. Markisz on four occasions between January 6, 2009 and February 11, 2009, for emotional stress associated with marital conflicts, communication problems and work related stress.

30. During the claim investigation, Banner obtained medical records from Dr. Leonard M. Malamud. According to Dr. Malamud's records, on May 13, 2010, Mr. Markisz reported to him that Mr. Markisz had been on Wellbutrin for between two-and-a-half and three years, contrary to Mr. Markisz's representations in the Application that he had stopped taking Wellbutrin in March 2009 and was not currently taking any prescription medication. Similarly, according to pharmacy records obtained during Banner's claim investigation, Mr. Markisz filled prescriptions for Wellbutrin from 2007 through the time of his death, including a 90-day supply on April 28, 2009, a month before he signed the Application.

31. During the claim investigation, Banner obtained records received from Rehab After Work. According to these records, on September 7, 2010, Mr. Markisz stated that he first realized opiates were a problem ten years before, and that he first used Percocet, Oxycodone, and Morphine at age 26. At the time of the Application, Mr. Markisz was 27 years old.

32. Banner would not have issued the Policy at a Preferred Tobacco rating had it known about, *inter alia*, Mr. Markisz's history of consultations, diagnosis and treatment with multiple members of the medical profession, his continued use of prescription medication at the time of the Application, his history of drug and alcohol use, and his depressive symptomatology including functional impairment, as appears from the information obtained during the claim investigation.

33. On November 18, 2011, based on the information obtained during the claim investigation and Banner's conclusions that Mr. Markisz committed suicide and made material misrepresentations in the Application, Banner denied Mrs. Markisz's claim for the death benefit proceeds under the Policy and refunded all premiums paid with interest.

**COUNT I**
**DECLARATORY JUDGMENT – SUICIDE BENEFITS**

34. Banner hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

35. On the facts averred above, there is now an actual controversy of a justiciable nature as to whether Mr. Markisz committed suicide.

36. Based on the information obtained during the claim investigation, Banner has concluded and therefore avers that Mr. Markisz committed suicide.

37. Banner is entitled to a judicial declaration that the benefits payable under the Policy are limited to the suicide benefits.

**COUNT II**
**DECLARATORY JUDGMENT – MATERIAL MISREPRESENTATION**

38. Banner hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

39. On the facts averred above, there is now an actual controversy of a justiciable nature as to whether Mr. Markisz made one or more misrepresentations in the Application concerning, *inter alia*:

a) Mr. Markisz's history of consultations, diagnosis and treatment with multiple members of the medical profession;

b) Mr. Markisz's continued use of prescription medication at the time of the Application;

c) Mr. Markisz's history of drug and alcohol use; and

d) Mr. Markisz's depressive symptomatology including functional impairment.

40. Based on the information obtained during the claim investigation, Banner has concluded and therefore avers that Mr. Markisz made one or more misrepresentations in the Application, and that Mr. Markisz knew that the representations were false or made them in bad faith.

41. If Mr. Markisz had made truthful representations in the Application, Banner would not have issued the Policy at a Preferred Tobacco rating.

42. Banner is entitled to a judicial declaration that the Policy is void *ab initio*, as it was issued by Banner in reliance upon material misrepresentations, or in the alternative, that the misrepresentations constitute grounds for rescission of the Policy by Banner.

## RELIEF REQUESTED

WHEREFORE, Banner respectfully requests the entry of an Order by this Court declaring that:

A. Banner's obligations under the Policy are limited to the payment of the suicide benefits;

B. the Policy is void *ab initio*, or in the alternative, that Banner may rescind the Policy due to one or more material misrepresentations made in the Application;

C. Banner is entitled to such further relief as this Court deems appropriate.

Dated: November 18, 2011

DRINKER BIDDLE & REATH LLP

By: /s/ Timothy J. O'Driscoll
Stephen C. Baker (Bar I.D. No. 32326)
Timothy J. O'Driscoll (Bar I.D. No. 82572)
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
*Attorneys for Plaintiff*
*Banner Life Insurance Company*